**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RESURRECTION HEALTHCARE and FACTORY MUTUAL INSURANCE CO., | ) ) ) | |
| Plaintiffs, | ) ) | No. 07 C 5980 |
| v. | ) ) | Magistrate Judge Maria Valdez |
| GE HEALTH CARE, division of GENERAL ELECTRIC CO., | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Discovery Responses [Doc. No. 39]. For the reasons that follow, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs Resurrection Health Care and Factory Mutual Insurance Co. (collectively "Resurrection") filed their complaint against defendant GE Health Care ("GEHC") in Illinois state court on September 17, 2007. On October 23, 2007, the case was removed to federal court on the basis of diversity jurisdiction. In the complaint, Resurrection alleges that on July 25, 2006, GEHC employees, who were contracted to operate a bio-medical department in a Resurrection-affiliated hospital, negligently allowed mercury to spill on the hospital's floor and improperly disposed of the mercury after the spill was discovered.

Resurrection's motion seeks to compel GEHC to produce four documents it has withheld due to claims of attorney-client privilege and/or work product.[1] The documents at issue include interviews of GEHC employees who were present at the hospital at the time of the spill; a written statement by one of those employees; and documentation of a site visit by another GEHC employee.

## DISCUSSION

**A.**     **Work Product**

The application of the work product doctrine is governed by federal law. *See A.O. Smith Corp. v. Lewis, Overbeck & Furman*, No. 90 C 5160, 1991 WL 192200, at *1 (N.D. Ill. Sept. 23, 1991). The work product doctrine protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

In determining whether a document was prepared in anticipation of litigation, the threshold question generally is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared for or

---

[1] Resurrection alternatively seeks an order compelling GEHC to amend its privilege log a second time. The Court agrees that the descriptions in the Amended Privilege Log are deficient, *see, e.g., Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992)*,* but does not order further amendment because the Court has instead reviewed the relevant documents *in camera*. *See Am. Nat'l Bank & Tr. Co. v. Equitable Life Assur. Soc'y*, 406 F.3d 867, 880 (7th Cir. 2005) (holding that when there are few documents at issue, performing an *in camera* review rather than ordering an amended log may properly balance the parties' competing interests while saving judicial resources).

obtained *because of* the prospect of litigation." *North Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995) (citation omitted) (emphasis added); *see Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). Therefore, documents that were prepared for other reasons, such as documents created in the ordinary course of business, cannot be withheld as work product. *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000); *see also In re General Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000) ("[A] document prepared for both legal and non-legal review is not privileged."); *Allendale*, 145 F.R.D. at 87 (holding that documents prepared in the ordinary course of business are not work product even if litigation is imminent or ongoing).

In addition, to be subject to work product immunity, the documents at issue must have been created in response to "a substantial and significant threat" of litigation, which can be shown by "'objective facts establishing an identifiable resolve to litigate.'" *Allendale*, 145 F.R.D. at 87 (citation omitted). Documents are not work product simply because "litigation [is] in the air," *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *5 (N.D. Ill. Aug. 12, 1999), or "there is a remote possibility of some future litigation." *McCook Metals LLC v. Alcoa*, 192 F.R.D. at 259. "The fact that litigation actually ensues or that a party has retained an attorney, initiated investigations, or engaged in negotiations over a claim, is insufficient to dispositively establish anticipation of litigation." *Allendale*, 145 F.R.D. at 87.

The Court finds that the documents at issue are not protected work product because GEHC has failed to show that they were created in response to a substantial and significant threat of litigation. GEHC's claim that "[d]ue to the extensive nature of the contamination . . .

3

GE Health Care reasonably anticipated . . . that litigation was likely," (GEHC Resp., Ex. A, ¶ 7), is not sufficient by itself. *See Caremark*, 195 F.R.D. at 615 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)) ("'The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product.'").

The mercury spill at issue occurred on July 25, 2006. The present lawsuit was filed in Illinois state court on September 17, 2007. Document 2 was created on March 30, 2007;[2] Document 3 was created and/or revised on various dates from September 28, 2006 to March 28, 2007; Document 4 was prepared on August 1, 2006; and Document 5 was prepared on October 4, 2006. The documents at issue were created almost six months to over one year before the lawsuit was filed, and GEHC has offered no objective facts demonstrating an identifiable resolve to litigate before that date. *Cf. Ocean Atl. Dev't Corp. v. Willow Tree Farm, LLC*, No. 01 C 5014, 2002 WL 1968581, at * 5 (N.D. Ill. Aug. 23, 2002) (finding a significant threat of litigation existed where the defendant's communications "frequently reference[d] its fear that [plaintiff] would file suit against it . . . and remark[ed] on [plaintiff's] litigious nature").

Moreover, even if litigation had been imminent at the time the documents were created, GEHC has not established that the internal investigation of the mercury spill was performed solely for the purpose of litigation, and the documents would not have been created in the ordinary course of business. *See Caremark*, 195 F.R.D. at 615 (quoting *Binks*, 709 F.2d at 1119) ("'If in connection with an accident or an event, a business entity in the ordinary course of

---

[2] It is unclear whether GEHC intended to claim that the work product doctrine applies to Document 2. The privilege log lists only the attorney-client privilege, but GEHC's motion and affidavit in support argue that it is also subject to the work product doctrine.

business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery.'").

B.  Attorney-Client Privilege

Having determined that none of the documents are governed by the work product doctrine, the Court now turns to whether they are protected by the attorney-client privilege. Both parties agree that Illinois law governs the scope and application of the privilege in this diversity case. *See* Fed. R. Evid. 501. In the corporate context, Illinois applies the "control group" test to determine whether communications by corporate representatives are cloaked with the privilege. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 258 (Ill. 1982). Under this test, a communication is not privileged unless it is made by a member of the control group, which includes top management as well as "an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." *Id.* (holding further that "the individuals upon whom [a member of the control group] may rely for supplying information are not members of the control group"); *see Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 563 (N.D. Ill. 2007).

However, not all communications by members of the control group are privileged. The privilege only applies if "the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Consolidation Coal*, 432 N.E.2d at 257. As the party asserting the attorney-client privilege, GEHC has the burden of proving the privilege applies to the communications at issue. *Id.*

5

*Document 2*

According to an affidavit submitted by Vincent Giordano, GEHC's Environmental Health and Safety Counsel, Document 2 reflects interviews conducted on March 30, 2007 with GEHC employees Diane French, Brayden Christensen, Clayton Stegner, and Randy Moreland. (GEHC Resp., Ex. A, ¶ 2.) The interviews were conducted by Richard DeLuca, GEHC's Global Health and Safety Manager, and James Keith, GE's Employee Health Services Manager - Americas, at Giordano's direction.[3]

French is a GE Biomedical Environmental Technician; Christensen is a Program Coordinator; Stegner is a GE Biomedical Engineering Technician; and Moreland is GE Director of Service, Clinical Services. French and Stegner are responsible for preventive and corrective maintenance on medical equipment; Christensen oversees GEHC's bio-medical service department and is also responsible for preventive and corrective maintenance; and Moreland oversees the management of all GEHC bio-medical service contracts.

In this case, GEHC has not established that French, Stegner, Christiansen, or Moreland are members of the corporate control group. GEHC has not offered evidence that these individuals are typically involved in decisionmaking at the highest levels.[4] Furthermore, despite

---

[3] Randy Moreland also was in attendance at the interview of Brayden Christensen, and Christensen attended the interview of Moreland.

[4] GEHC states that Moreland provides advice and recommendations to GEHC counsel regarding potential safety and chemical hazards. It is not clear from this description whether Moreland's advisory role "is such that a decision would not normally be made without his advice or opinion." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 258 (Ill. 1982). But even if Moreland were a member of the control group, Christensen's presence at his interview would vitiate the privilege. *See Sterling Fin. Mgmt., L.P. v. UBS PaineWebber, Inc.*, 782 N.E.2d 895, 905 (Ill. App. Ct. 2002) ("Distribution of otherwise privileged materials to individuals outside the corporation's control group destroys the privilege.").

GEHC's claim that these individuals "served in an advisory role" by "provid[ing] information and recommendations" to counsel, (*see* GEHC Resp., Ex. A, ¶ 2.F), the documents reveal that they provided only factual information, not opinions or recommendations. *See Consolidation Coal*, 432 N.E.2d at 259 (finding that an employee whose "role was one of supplying the factual bases upon which were predicated the opinions and recommendations of those who advised the decisionmakers" was not a member of the control group). Therefore, their communications are not cloaked with the attorney-client privilege under Illinois law.

GEHC has established that Richard DeLuca and James Keith are members of the control group. However, Document 2, which is characterized as DeLuca's and Keith's "summaries" of interviews of non-control group members, does not reflect any communications made by the control group members. An *in camera* review of the documents reveals that they are essentially verbatim transcripts of the interviews. Because the only communications in these documents were made by non-control group members, the documents are not protected by the attorney-client privilege.

### *Document 3*

Document 3 was prepared at Giordano's direction and consists of notes of follow-up interviews of Christensen, Stagner, and French. Giordano's affidavit states that the interviews were conducted by DeLuca and David Boccia, Strategic Program Manager, GEHC Services, and that the interview summaries were prepared by DeLuca. The Court finds that GEHC has made a sufficient showing that Boccia, like DeLuca, is a member of GEHC's control group.

Document 3 also consists primarily of verbatim accounts of interviews of the non-control group members. The Court finds, however, that three paragraphs in the document do reflect

communications made by the control-group interviewers/preparers of the document.[5] Document 3 therefore must be produced, but GEHC may redact the three paragraphs containing privileged communications.

*Document 4*

Document 4 was prepared at the direction of Giordano and Moreland. This document is Christensen's summary of information concerning his observations about the discovery of the contamination and the actions of GEHC staff in response. As explained above, Christensen is not a member of GEHC's control group, and Document 4 is not protected by the attorney-client privilege.

*Document 5*

Document 5 is a summary of a hospital site visit and was prepared by DeLuca at Giordano's direction. The summary was forwarded to Giordano, Boccia, Keith, and Tom Nolan, Director, GE Environmental Health and Safety Assurance. The Court finds that this document is a communication by a control group member apparently made for the purpose of securing legal advice. The Court further notes that the document was not disclosed to anyone outside the control group and that it is conspicuously labeled "Attorney Client Privilege Communication." Therefore, Document 5 is privileged and may be withheld from production.

**CONCLUSION**

---

[5] The paragraphs that are subject to the attorney-client privilege are: (1) the first full paragraph following the brief outline at the beginning of the document; (2) the indented paragraph following the paragraph described in (1), above; and (3) the last paragraph with the heading "Summary".

For the foregoing reasons, Plaintiffs' Motion to Compel Discovery Responses [Doc. No. 39] is granted in part and denied in part.[6] Defendant is ordered to produce Documents 2 and 4 in their entirety and Document 3 in redacted form, consistent with this opinion. Plaintiffs' motion is denied as to Document 5, which need not be produced.

**SO ORDERED.**

**ENTERED:**

**DATE: March 16, 2009**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**

---

[6] Other discovery disputes included in the original motion were addressed at the Court's December 9, 2008 hearing.